Jonathan Hilton on behalf of the ticket purchaser Erin Paxson, I'd like to reserve five minutes of time for rebuttal. Go ahead, please. Thank you, Your Honors. This case concerns whether the terms of use of a Ticketmaster subsidiary's website were supported by adequate consideration under Nevada law. I'd like to begin this morning by drawing a distinction between the actual grounds on which the district court's opinion is based and alternative grounds that my friend on the other side suggests that this court use as an alternative basis for affirmance. As for what the district court actually held, the district court looked to the language of the contract, the arbitration provision, and construed this terms of use, and it incorrectly found that Nevada would import the duty of good faith and fair dealing into this document in order to save the Ticketmaster subsidiary from its own heavy-handed drafting. We've dealt with that in our brief by looking at cases like SERPA, where only the dissent in Nevada law would have accepted such an approach. And we've also pointed to the Nevada Supreme Court's policy. Let me ask you a question. If we were to agree with the district court that any changes to the terms of use would only be prospective and not apply to any pending claims, would you agree then there would be adequate consideration? There is actually a split in the case law around the country about whether it's enough for it to apply to pending, whether the unilateral modification can apply to pending claims versus accrued claims. So there is that distinction. So I would argue that in order for it to really have consideration, the court should be looking as to accrued claims rather than just pending. But what I will say is that at least in that case, the district court's decision would have been consistent with its prior decision in West Cab. Because West Cab included a savings clause. So let me just clarify. So if any unilateral modification of the terms of use do not apply to accrued claims, then you agree there's adequate consideration? Yes, Your Honor.  In that case, there's arbitration on both sides. Each party is bound to arbitrate something. And the hallmark of what makes something a contract rather than just an aspiration or a promise is that both sides have to be bound. That's the Sala case from the Nevada Supreme Court. But I want to also talk about the alternative grounds for affirmance that my friend recommends to the court, which is this concept that because my client successfully purchased tickets through the website and did attend a festival, that there's some sort of part performance or full performance of the contract that acts as a consideration substitute. This is an alternate grounds that was not raised before the district court below. And I want to make two points about that. The first is a legal point and that as a matter of law, this is incorrect. If you have performance or part performance, this goes to promissory estoppel, as the Sixth Circuit explained in the Day v. Fortune High Tech decision. So on the legal issue of whether part performance can substitute for consideration, I would look to the Sixth Circuit's opinion in Day v. Fortune High Tech. It looks like the terms of use were updated last year. So is it your position that those new terms of use don't apply to Paxson? My position, Your Honor, is the terms of use apply to no one. The terms of use are illusory and therefore they can't actually apply to anyone. What we have is a distinction between the terms of use and the terms of sale. Now, the terms of use govern my client's use of the website. At least according to their terms, she supposedly assented to them just by using the website in the first place. The terms of sale are a very different document and it's one that Ticketmaster never moved to compel arbitration on and never introduced into the record below. So the terms of sale, had the other side raised this specter that they would be arguing the idea that part performance somehow acted as a consideration substitute? No, part of your relief that you request in your complaint is a refund. What would that be based on? Because you're saying there's no contract, illusory, no contract was ever formed, but you can't sort of on the other hand say, yeah, but I get refunds on the contract too. Yes, Your Honor. Two points to that. One is that we're actually attempting to get a refund under Ticketmaster's own purchase policy. So in the complaint, you'll see that being the headline is that Ticketmaster has a purchase policy, but of course Ticketmaster didn't move to enforce the arbitration provision in that because it was invalidated by this court in Heckman. So at the time we would have filed our complaint, the district court's decision in Heckman invalidating the Ticketmaster policy had come out and this court then affirmed it. So ultimately what you have is Ticketmaster had its choice. It could have attempted to enforce its purchase policy, which is what we were really suing under. That had new era management as the company. The one that it actually attempted to enforce here are the terms of use, which use jams. And then there's the terms of sale, which are not in the record. But if you were to attempt to, for instance, take judicial notice of the Wayback Machine and look through the internet archives, those are incompatible with the terms of use because they are for AAA, American Arbitration Association. So the way that it's set up, Ticketmaster is attempting to have its pick of which company it can use, and it has so many arbitration agreements that it can just pick which one it wants to use in any given litigation. So what we're saying is that in this case, if you look at those terms of use and you interpret them as a standalone policy, which by the way is what Nevada law would do under a case called Whitemane, which I cite in my reply brief. If you look at the terms of use as a standalone, there's no consideration for that document at all because it can be unilaterally modified at any time. We just certify this to the Nevada Supreme Court? I think there are good reasons for doing so. But you can look to the Nevada Supreme Court for guidance here. One reason that Nevada law is clear is because you have SERPA versus Darling, which declines to import the duty of good faith and fair dealing. So in order to... Would you prefer that we certify it or that we stumble along and try to do it ourselves? I think certification is probably the best choice overall, because if you look at the Fourth Circuit's decision in Johnson, which looks at something very analogous to this, what the Fourth Circuit says in Johnson is very telling. States have a right to interpret their laws regarding consideration in a very particular way, looking to public policy. What is consideration? How do you construe a contract? Do you import duties of good faith and fair dealing? Do you construe against the drafter? They're all public policy choices. And so it would be appropriate to certify it to the Supreme Court of Nevada in that case, because the court then can interpret its own public policy as to how it wants to go about resolving consideration issues. I see I have six minutes remaining. Does the court have any further questions before I reserve? I assume that you are no longer arguing that Ohio law applies. At this stage, no, Your Honor. I think the district court's decision to apply Nevada law was reasonable, and it's also something that we don't have any qualms with for class management. That way, we don't have to go do a state-by-state survey for everything. Thank you. Thank you, Your Honor. All right. Thank you. Go ahead, please. Good morning, Your Honors, and may it please the court. My name is Eric Kazarian, and I, along with my colleague, Alexander Christensen, represent the front gate FLEs in this case. To advance her singular argument in this case, that the terms of use containing the arbitration clause at issue was an illusory contract and was not supported by adequate consideration while simultaneously suing for breach of contract under the ticket purchase agreement that incorporated those terms, appellant requires that this court treat the ticket purchase and the terms of use as separate agreements. The facts don't support such a finding. The law does not support such a finding. There was a single indivisible transaction in this case that resulted in the formation of a single indivisible contract, which was amply supported by adequate consideration, both by front gate and by appellant, and the bilateral agreement to arbitrate any disputes was one of the terms that was incorporated in this single unitary contract. The facts that led to the formation of this single unitary contract are not in dispute, Your Honors. Appellant went to the front gate website, selected the tickets she wanted to purchase prior to clicking purchase agreement. She agreed to be bound by the terms of sale and the terms of use containing the arbitration clause. She then clicked purchase ticket. She paid for that ticket and front gate delivered physical tickets and wristbands to her at her home address. This was one transaction with multiple terms incorporated into a single contract. The terms of use on the front gate website, my opponent continues to refer to the ticket. Can I ask you? I didn't understand your first point. You're saying, look, they brought a breach of contract claim, but they're simultaneously claiming that the contract is illusory. Is that your point? Yes. Okay. But the breach of contract claim is regarding the ticket master purchase policy, which I understand from opposing counsel statement is different than the terms of use. Is that right? The terms of sale and the terms of use were standalone, were separate agreements that were incorporated into the ticket purchase agreement. And in fact, plaintiff in the cause of action for breach of contract and breach of fiduciary duty in her complaint, specifically refers to and relies on the terms of use and the refund policy within the terms of use as a basis for a claim. And this is found at excerpts of record paragraph 25. So is the terms of use by front gate different than the terms of service by front gate or the terms of use incorporate in the terms of service? Are they separate? They're separate agreements that are separate, that are hyperlinked at the time of purchase while purchasing the tickets. So one purchase of tickets requires you to enter into a terms of service with front gate, a terms of use with front gate and a purchase policy with ticket master. Is that correct? I believe that's correct. So that seems like you all have created this very complex system. Well, it's not complex, Your Honor, only because there's an affirmative click wrap at the time. So, I mean, a contract can have multiple terms. So when you're purchasing, the contract says, here are the tickets you're buying, here are the terms you're agreeing to. And the terms of use are one of the terms that you're agreeing to as part of that. And the terms of use are not simply website usage terms. They incorporate terms and policies as to what front gate assumes responsibilities for with respect to that ticket purchase, a refund policy and the agreement to arbitrate, which itself is separate consideration, as Your Honor noted in the Tompkins case in district court. Just a mere agreement, a mutual agreement to arbitrate is itself consideration. But putting that aside. You know, I have to say I was very disappointed to see in front gates terms of use. You have a delegation clause that delegates all disputes regarding formation of the agreement to the arbitrator, which is clearly unlawful under Supreme Court law. Why would you have such a blatant, unlawful provision? I don't know when the terms of use that we are moving under, Your Honor, were drafted. So I don't have the information on whether that predates Supreme Court policy on that issue or not. So I don't have the answer to that. But I am here to say that the terms of use containing the arbitration clause is prospective. And I mean, the modification provision is prospective. We are moving to compel arbitration under the terms of use that existed. OK, I'm looking at Caremark Supreme Court 2022. That does predate your terms of use. And it specifically says that formation and enforceability of delegation clause have to be resolved by the court. So I just I I find it disturbing to see. I mean, it might be commercially useful to you. To have this unlawful provision in there, it might be misleading to your customers. But it's a little bit disturbing to see that it does. I believe this post date. I mean, it's not just Caremark. There are lots of Ninth Circuit cases as well. Going back even further that talk about the court has to resolve formation, can't delegate that to an arbitrator, that's, you know, Alstrom 2021. I mean, I can keep going back further, but I mean, clearly there was a lot of law here saying that the courts have to decide formation issues. And you just have an unlawful provision in your terms of terms of use. The ticket purchase transaction that's at issue and the terms of use that we're moving under all occurred on in August of 2021. The concert was in 2022. So the terms of use that is before the court right now, and it has been modified, it's not in the record and I'm not prepared to. All right. You don't know whether it was before or after. All right. Let me look at. Let me look. Granite Rock, U.S. Supreme Court, June 24th, 2010. The court must resolve the issue that calls into question the formation of the specific arbitration clause that a party seeks to have the court enforce. So if you're telling me that, oh, the law changed in 21, and this was a legitimate term of use, I mean, I can keep going back. OK, but that was Granite Rock was 2010. So that was 11 years before you're saying this terms of use for a transaction 11 years later. So I just, you know, I just think it's disappointing to see just blatantly not complying with the law in your agreement. That is that is not an issue in this appeal. They've not certainly they've not challenged it in this in this appeal. That is not the issue that is framed in this appeal. So I think if there's an issue with that, it would have to be briefed. But that's not what's here. There's a singular argument that is being made here, which is the contract containing terms of use is illusory and therefore not enforceable. They've in fact, on appeal, they've not challenged any aspect of the actual arbitration clause itself. They're just saying we didn't agree to arbitrate because the contract that contains it is illusory. Can you can you speak to the to the question of whether it would make sense for us to certify this case to Nevada? Absolutely, Your Honor. I don't think there's a need to certify because the primary issue here that Nevada law incorporates presumption of the implied covenant of good faith and fair dealing has been established by the Nevada Supreme Court since 1998. And in fact, this court does not even have to predict how a Nevada court of appeal or in the Nevada court would interpret this illusory contract issue with the specific terms of use. That's very similar because the Nevada Court of Appeal in Lift v. Abinanti in August of 2025, which we put in our brief, decided the same issue. And in fact, citing this decision on appeal and two other decisions, Cone and I believe it's Ritz, said these are the well-reasoned decisions. And they followed these these courts. Just to be clear, do you think it's just unnecessary for us to certify or do you oppose our certifying? Well, I guess both because you would have to sort of, my understanding of the certification requirements is, is there a novel or undecided issue here? And the concept that there's a built-in assumption of, let me pull up my notes, an implied covenant of good faith and fair dealing exists in every contract has been decided by the Nevada Supreme Court in 1998 in Consolidated General Nevada v. Cummins Engine Company, 114 Nevada 1304. And in that case, the court said, and quote, an implied covenant of good faith and fair dealing is recognized in every contract under Nevada law. And that is the principle that the district court cited in saying that the unilateral modification provision is not illusory. And that is the same concept that the Lyft court, Lyft v. Abinante cited in concluding that the arbitration clause in that case and the contract that contained a unilateral modification provision was not illusory, was not unenforceable. So your position is that your contract, which contained the unilateral modification provision, violated the covenant of good faith and fair dealing? No, that is not. So I'm failing to understand your point, which if I understand your point, it is that provision violated the covenant of good faith and fair dealing. Therefore, the rest of it was not illusory. No, why do you if your answer is the unilateral modification provision doesn't violate the covenant of good faith and fair dealing? I'd like to hear it. Yes, the position is and that the holding of the district court below the district, the holding of Lyft v. Abinante is the inclusion of a unilateral modification provision does not invalidate a contract because such a contract and a modification provision is subject to the implied covenant in good faith and fair dealing. No, I understand that. But are you are you defending the unilateral modification provision is not violative of the covenant of good faith and fair dealing? Yes, I am. And the reason for that is because the unilateral modification provision in this case is only perspective, prospective, not retrospective. No, I understand that. And the law is under Peleg versus which is a California case that this court has cited before. An unilateral modification provision violates the implied covenant of good faith and fair dealing only when it is retrospective and applies to accrued claims. That is not what our provision says. And that's why it does not violate the implied covenant. In fact, the implied covenant in this case salvages the I'm just saying your argument there. I just find it puzzling. Why is that? Well, because it's in essence, you're saying that at least part of the contract violates the covenant, good faith and fair dealing. But it's you're saved by it because it only applies prospectively, right? I know perspective, I'm not saying it actually violates it. I'm saying is the inclusion of an implied sorry, the inclusion of a unilateral modification provision may be a cause of concern. But in this case, it's not because it is. It is not retrospective. That is the only time where you get crosswise with the implied covenant of good faith and fair dealing because you're applying it to accrued claims. You're applying it retrospectively. And in fact, in Heckman, your honors, which is, I think, what is it? The covenant of good faith and fair dealing that tells us that the provision is not retrospective. The implied covenant of good faith and fair dealing requires that in the event that you are making a modification to the contract, you will not do it in a way that that is unfair or unlawful. So that's what the implied covenant requires. But here's my ultimate concern. Let's assume that we agree with you and send it back to arbitration. Do you believe you're free to argue that this provision is valid for all cases? In all cases, in other words, your argument is the arbitrators get to decide all of this. You've taken the position that, well, this is saved because of the covenant, how we think the covenant of good faith and fair dealing might be applied to us. But I gather you're reserving the right to make a contrary argument in front of the arbitrator. This case has been sent to arbitration already. That's why it's on appeal under the arbitration provision that existed at the time. That is the only time we're going to deal with the terms of use at that point. Plaintiff has cited the terms of use as they existed. There's no issue of modification. We're not going to revisit this implied covenant in arbitration anymore because we're going to argue the merits of the case at that point based on the refund policy that plaintiff has cited in the terms of use that existed at the time of ticket purchase. And we will do the same. We move to compel arbitration under the clause of action, under the arbitration clause that existed at the time of the ticket purchase. There is a newer version online. We didn't move to compel arbitration on that because that doesn't apply to our claims. The one that plaintiff agreed to at the time of ticket purchase is what applies to our  So the district court relied on two cases because your whole argument hinges on whether it applies prospectively or not. And the district court relied on Reno, which was the district court's own case. But that case, there was a specific explicit sentence in that arbitration agreement that any change or termination will not apply to a pending claim. And you can see that that language is nowhere in your terms of use. Correct? Correct, Your Honor. But but under the Pellet case, which is 140 Cal. Well, let me let me keep going. So then the district court also relied on Cone. That's the other case that was relied on. But Cone wasn't even challenging contract formation. That was a case that was about unconscionability of the arbitration clause. So it wasn't really even on point. So I guess I don't see really any support in this underlying decision. Supporting that this only applies prospectively doesn't apply to accrued claims or pending claims. And the only Nevada district court decision to have addressed this issue actually came out the other way and agreed with your opposing counsel, Zappos. So there's a couple of points in here. Number one, I don't think we need to even dwell on the district court cases because the Nevada Court of Appeal has now spoken on the issue on a terms of use with a with a modification provision that's nearly identical to the one that's before this court and agreed with our district court in this case that that is the well-reasoned decision. And in fact, it said, as a result, respondents argument that the arbitration agreement was illustrious. In which case are you referring to? That is called Lift versus Abinante. It's a Nevada Court of Appeal decision from August of 2025, which we cite on page 44 of our brief. Because I think what's more on point is SERPA. And they're the Nevada Supreme Court. Only the dissent would have imported the good faith limitation in that case. And the majority found the option agreements illusory. So I think SERPA goes against you. And then Nevada appellate courts have expressed reticence to rewrite contracts to rescue the drafter. So I mean, I think there's enough here that this should be certified to the Nevada Supreme Court. The Your Honor, SERPA did not deal with a unilateral modification provision. It dealt with a single contract with several option contracts, each requiring separate consideration. In other words, one side had to exercise one right in order for the other obligation to  I see my time is up. May I briefly respond to this question and conclude? Yes, briefly. So in fact, SERPA is not even on point to the degree that the Lift versus Abinante case did not even cite SERPA. If it was such a controlling case on this issue, you would think that the Nevada Court of Appeal would cite to its own Supreme Court for support and not come out the other way. That's not what happened in this case. So for these reasons, Your Honor, I think there's two paths to affirmance here. Number one, this was a single contract that everybody agreed to and performed under. So if the contract is valid, then the arbitration agreement is valid. And otherwise, plaintiff can't sue for its breach. And number two, as the Lift versus Abinante Court found in affirming nearly identical modification provision, unilateral modification provision is subject to the covenant of good faith and fair dealing. And in this case, that that saves this contract as well. All right. Thank you. Thank you, Your Honor. Thank you, Your Honor. I'll start with the Lift versus Abinante case, which came out in the Nevada Court of Appeals while the briefing in this case was evolving. So a couple of points. One, my friend very correctly said Lift versus Abinante never considers SERPA. And the parties, again, simply didn't bring up this point that SERPA is controlling. But I want to actually talk about the circumstances in Lift versus Abinante because it is a very different type of agreement. So Lift versus Abinante is about Lift drivers. So these are people who are showing up to work every day and they're driving for Lift. The provision, and it's cited on page 44 of my friend's brief, the provision says that the modifications are binding on you only upon your acceptance of the modified agreement. So ostensibly, what you have is a Lift driver who's showing up to work. They're on their phone. They're going to learn that the terms have changed. And if they choose to continue their, it's not exactly an employment relationship, but it's a contractual, independent contractor relationship, then they're going to agree to the modified terms. That's very different from something here where there's no notice to the consumer. The consumer is just bound. When the terms update on the website, they're going to be bound effective immediately, even if they never actually review the terms. Simply by being on the website, whether to access their tickets or because they want to look up the terms in the first place to know whether they have a claim. So in terms of that actual language, there's a really big difference between somebody who chooses to continue an employment relationship after getting notice that, hey, any claims that I have, even accrued in the past, you know, I'm going to have to consent to arbitrate. That's very different from somebody who's not going to get notice. The appellate court cases, Johnson out of the Fourth Circuit and Carey out of the Fifth Circuit, really speak to that notice issue. And I think that that is going to clarify why there's going to be a difference. But ultimately, I agree, SERPA is controlling and it's never cited in that, at least as of the date that my friend cited it, it's an unpublished Nevada appellate court decision. As for whether the terms of use and the terms of sale are the same document, I want to correct something, which is that my friend said that they incorporated one another. That is unfortunately for Ticketmaster incorrect. Under the Whitemane decision, which I cite on page 12 of my reply brief, when a Nevada court is construing different agreements, one of which contains an arbitration clause, the important thing is that the documents have to reference each other within the documents. Can I get your clarification? You just said it was an unpublished appellate decision. You're talking about Lyft, right? Because SERPA is published. OK, go ahead. Yes, Your Honor, I was talking about Lyft. Under Whitemane, which is published, the document that has the arbitration agreement in it and the document, in this case, the terms of use, at least one has to reference the other. And Ticketmaster is unable to establish that here. So if you read through the terms of use, they don't refer to the terms of sale. And the terms of sale, it never put in the record. So if it's going to argue now on appeal for the first time that, hey, these two documents actually incorporate each other, the record is just not going to be sufficient to support that in this case. And the terms of sale and the terms of use, in effect, at the time did not reference each other. So I want to talk a little bit more about the duty of good faith and fair dealing. One thing- That's also a completely separate agreement. Is that correct? I believe that the terms of service might actually just be a misnomer that one party or the other has thrown out. I'm not actually sure that there are terms of service. Maybe that refers to Ticketmaster. Ticketmaster has terms of service specifically as a purchase policy. But the documents I'm familiar with, with Frontgate, the subsidiary, are the terms of sale and the terms of use. Okay, what was your response to his argument that you're saying the contract is illusory and yet you're still also alleging a breach of contract? The only time that our complaint, which I believe is in the record at ER 15, the only times that it even references any of these Frontgate terms, it's very clear that it says, if the court does find somehow that there's a contract there, in the alternative, we wish to state a claim on that basis. But what we actually are suing under are Ticketmaster's purchase policy. So that's the headliner. And the very first paragraphs of that amended complaint explain why we're doing that. It's because the arbitration clause in that provision is invalid. And then when we refer to the terms of use after, those are all in the alternative. So we have consumer claims that are not based on contract formation. We have unjust enrichment claims, which go to the equity points. And then we have the Ticketmaster purchase policy. And so only in the alternative that we do get forced into arbitration or whatever it is, where, okay, the terms of use are actually contract. Only then would we pursue any claim under it. With that, I see that my time is about to expire, unless the court has any further questions. No, okay. I want to thank, on behalf of the panel, both counsel, your arguments were very helpful today. So thank you very much and safe travels. Thank you. Okay. All right. We are adjourned for the day. Thank you very much.
judges: THOMAS, KOH, THOMAS